# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 28, 2012

Krissi T. Gore
Chitwood Harley Harnes, LLP
1230 PEACHTREE ST NE STE 2300
ATLANTA, GA

Appeal Number: 12-15024-B
Case Style: Washtenaw County Employees Ret, et al v. Piedmont Office Realty Trust,, et al
District Court Docket No: 1:07-cv-02660-CAP

The referenced case has been docketed in this court. Please use the appellate docket number noted above when making inquiries.

Attorneys who wish to participate in this appeal must be properly admitted either to the bar of this court or for this particular proceeding pursuant to 11th Cir. R. 46-1. An attorney not yet properly admitted must file an appropriate application for admission within fourteen (14) days from this date. In addition, all attorneys (except court-appointed counsel) who wish to participate in this appeal must complete and return an appearance form within fourteen (14) days. Application for Admission to the Bar and Appearance of Counsel Form are available on the Internet at www.ca11.uscourts.gov . The clerk may not accept motions or other filings from an attorney until that attorney files an appearance form. See 11th Cir. R. 46-5.

11th Cir. R. 33-1(a) requires appellant to file a Civil Appeal Statement in most civil appeals. You must file an original and one copy of a completed Civil Appeal Statement, with service on all other parties, within 14 days from the date of this letter. Civil Appeal Statement forms are available on the Internet at www.ca11.uscourts.gov , and as provided by 11th Cir. R. 33-1(a).

We have not yet received the Certificate of Interested Persons and Corporate Disclosure Statement (CIP) required by FRAP 26.1 and the accompanying circuit rules. The rules provide that the certificate must be filed by every appellant [and cross-appellant] with this court within 14 days after the date the appeal is docketed in this court, or along with the filing in this court by any party of any motion, petition, or pleading, whichever occurs first. The rules further provide that on the same day a paper certificate is served, the party filing it must also complete the court's web-based certificate at the "Electronic Filing" link of the court's website, www.ca11.uscourts.gov , by electronically providing the information required for that form.

Only the ticker symbols for publicly traded corporations that are listed on the paper CIP must be entered in the web-based system. If your CIP does not include any publicly traded corporations, you are required to go to the website and simply click the button indicating that you have no publicly traded corporations to report. Pro se parties are **not required or authorized** to complete the web-based certificate.

You are hereby notified that the clerk is not authorized to submit to the court any brief (except for the reply brief of an appellant or cross-appellant), petition, answer, motion or response that does not contain the certificate, but may receive and retain the papers pending supplementation of the papers with the required certificate. You are also hereby notified that failure to submit the required certificate will result in your document(s) being returned unfiled which may ultimately result in dismissal of your appeal.

Pursuant to Eleventh Circuit Rule 42-1(b) you are hereby notified that upon expiration of (14) days from this date, this appeal will be dismissed by the clerk without further notice unless the default(s) noted below have been corrected:

File a Transcript Order Form , as required by Fed.R.App.P. 10(b)(1); a Transcript Information Form is available from the district court clerk. Appellant is required to file and serve copies of the form in accordance with the instructions included on the form. UNLESS A TRANSCRIPT IS ORDERED, APPELLANT'S BRIEF MUST BE SERVED AND FILED WITHIN 40 DAYS FROM SEPTEMBER 28, 2012. See 11th Cir. R. 12-1 and 31-1.


Sincerely,

JOHN LEY, Clerk of Court

Reply to: Melanie Gaddis, B
Phone #: (404) 335-6187


                                                           DKT-2 Appeal WITH Deficiency

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In Re Piedmont Office Trust, Inc. Securities Litigation | Civil Action Number: 1:07-cv-002660-CAP <br><br> CLASS ACTION |

## NOTICE OF APPEAL

Notice is hereby given that Plaintiffs in the above-captioned action hereby appeal to the United States Court of Appeals for the Eleventh Circuit from the Order on Defendants' Motion to Dismiss entered on August 27, 2012 [ECF No. 228], attached hereto as Exhibit "A" and the Judgment entered on August 27, 2012 [ECF No. 229], attached hereto as Exhibit "B."

Dated:  September 26, 2012

Respectfully submitted,

 /s/  Krissi T. Gore
Robert W. Killorin   Ga. Bar No. 417775
Krissi T. Gore   Ga. Bar No. 687020
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 873-3900
Facsimile: (404) 876-4476
kgore@chitwoodlaw.com

Nicholas E. Chimicles
Kimberly M. Donaldson
Timothy N. Mathews
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 W. Lancaster Avenue
Haverford, Pennsylvania  19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
kimdonaldson@chimicles.com

Lawrence A. Sucharow
Joseph Sternberg
Michael Woolley
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
lsucharow@labaton.com

***Co-Lead Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2012, I electronically filed the

foregoing **NOTICE OF APPEAL** with the Clerk of the Court using the CM/ECF

system, which will automatically send email notification of such filing to the

following attorneys of record:

Tony G. Powers    tpowers@rh-law.com
Kimberly L. Myers  kmyers@rh-law.com

Michael R. Smith  mrsmith@kslaw.com
Bethany M. Rezek  brezek@kslaw.com

/s/  *Krissi T. Gore*
KRISSI T. GORE
Georgia Bar No. 687020
***Co-Lead Counsel for Plaintiffs***

**CHITWOOD HARLEY HARNES LLP**
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, GA 30309
Phone: (404) 873-3900
Fax: (404) 876-4476
Email: kgore@chitwoodlaw.com

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  | | |
|---|---|---|
| In Re: Piedmont Office Trust Inc. Securities Litigation | | CIVIL ACTION NO. 1:07-CV-2660-CAP |

**O R D E R**

This matter is before the court on the defendants' motion to dismiss the Third Amended Complaint [Doc. No. 214].

**I.   BACKGROUND**

This action was filed on October 25, 2007 [Doc. No. 1], as a purported class action against Piedmont Office Realty Trust, Inc. ("Piedmont"), and certain Piedmont directors and officers.  The plaintiff, a Piedmont shareholder, filed its Amended Complaint on May 19, 2008.  After the court granted in part and denied in part the defendants' motion to dismiss the Amended Complaint, the plaintiff (at the court's direction) filed the Second Amended Complaint [Doc. No. 47].  In due course, the court granted the plaintiff's motion for certification of a class [Doc. No. 109]. Upon appeal of this ruling by the defendants, the Eleventh Circuit Court of Appeals vacated and remanded the court's decision as it pertained to presumption of reliance as set forth in <u>Affiliated Ute</u>

<u>Citizens v. United States</u>, 406 U.S. 128 (1972) [Doc. No. 181]. According to the Court of Appeals, the Second Amended Complaint did not support the ruling made by this court.  The appellate court stated, "We do not decide whether a class is supportable without the presumption of reliance nor whether a class would be supportable under allegations in an amended complaint consistent with arguments presented to the district court and this court." [Doc. No. 181 at 3].

As a result of the Court Appeals' statement, the plaintiff sought leave to file a third amended complaint [Doc. No. 186].  The court granted leave, and the Third Amended Complaint [Doc. No. 207] was filed by the plaintiff.

Count I of the Third Amended Complaint is brought pursuant to Section 14(e) of the Securities Exchange Act of 1934 ("Exchange Act") and alleges that the defendants made omissions of material information in a June 18, 2007, recommendation that shareholders not sell their shares in response to a second tender offer made by an unaffiliated entity.  Count II alleges that the defendants disseminated proxy solicitations pertaining the extension of the listing deadline in violation of Section 14(a) of the Exchange Act.

Piedmont, a Maryland corporation with its principal executive offices located in Norcross, Georgia, is primarily engaged in the acquisition and ownership of commercial real estate properties.  It

2

began as a public unlisted real estate investment trust ("REIT"), which means that (1) it is public because it is registered with the Securities and Exchange Commission ("SEC"), can sell to the investing public rather than only to "qualified investors," and is required to file reports with the SEC; and (2) it is unlisted because its securities are not listed on a national stock exchange. Because of this business model, Piedmont had a fixed life. According to the Articles of Incorporation, if its stock is not listed on a national securities exchange by January 30, 2008, Piedmont would required to sell its assets and distribute the proceeds.[1]

On May 25, 2007, Lex-Win Acquisition, an entity unaffiliated with the parties in this matter, offered Piedmont's shareholders the opportunity to tender an aggregate of up to 5.2% of the company's outstanding shares at $9.00 net per share. On June 12, 2007, Lex-Win increased this offer to $9.30 per share for an aggregate of up to 9.3% of the company's outstanding shares.

---

[1] This liquidation deadline was extended through an amendment to the Company's Articles of Incorporation. In January 2010, Piedmont effected a 3 to 1 reverse stock split, converting each outstanding share of common stock into 1/12 of a share of four classes of common stock, A, B-1, B-2, and B-3, which classes were to become listed at various intervals on the New York Stock Exchange.

Piedmont and its board of directors responded to both tender offers in filings with the SEC on June 8, 2007, and June 18, 2007, recommending that Piedmont's shareholders reject the tender offers. With regard to the June 18 response, the plaintiff alleges that the defendants failed to inform Piedmont's shareholders that the $9.30 tender offer exceeded the range of value – $8.25 to $9.12 per share – that Piedmont's financial advisors determined, as of June 18, 2007, that a Listing would produce and by omitting to disclose that this lower range of values rendered a listing unlikely.

On August 10, 2007, the defendants stated publicly that a listing of the company on the stock exchange would be unlikely.  On October 16, 2007, Piedmont filed a Schedule 14A Proxy Statement seeking shareholders' approval to extend the January 30, 2008 deadline for up to three years at the Board's discretion.  The plaintiff contends that this proxy statement was misleading in a variety of ways because it failed to disclose material facts to the shareholders.

In the Third Amended Complaint, the plaintiff names Piedmont[2] and the following Piedmont directors: (1) W. Wayne Woody; (2) Michael R. Buchanan; (3) Wesley E. Cantrell; (4)  William H.

_____

[2] According to the plaintiff, Piedmont is named as a defendant because it is the instrumentality and means used by the directors to disseminate false and misleading information to the shareholders.  No monetary damages are sought from Piedmont.

4

Keogler, Jr.; (5) Donald S. Moss; and (6) Donald A. Miller
(collectively "Director Defendants").  The Third Amended Complaint
contains two counts: violation of § 14(e) of the Exchange Act and
Rule 14e-2(b) promulgated thereunder (Count I); violation of
§ 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder
(Count II).

The defendants have moved to dismiss the Third Amended
Complaint [Doc. No. 214].  The defendants argue that the plaintiff
failed to meet the heightened pleading standards of the Private
Securities Litigation Reform Act ("PSLRA").

## II.  LEGAL ANALYSIS

### A. Motion to Dismiss Standard

The defendants move for dismissal under Federal Rule of Civil
Procedure 12(b)(6), which requires an assessment of whether the
plaintiff has set forth claims upon which this court may grant
relief.   Under the United States Supreme Court's recent
articulation of the analytic standard involved in applying this
rule, this court must construe the amended complaint in favor of
plaintiff, accept the factual allegations contained in the Amended
Complaint as true, and determine whether the plaintiff's factual
allegations present plausible claims.  See Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 555-56 (2007).  To be considered plausible,
a claim must be more than merely conceivable.  Id. at 555.  Thus,

"[d]ismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised." Id.

In considering a motion to dismiss under Rule 12(b)(6), "the Court may take judicial notice of the contents of relevant public documents that were required to be filed with the Securities Exchange Commission ("SEC") and were actually filed." In re Bellsouth Corp. Securities Litigation, 355 F. Supp. 2d 1350, 1361 (N.D. Ga. 2005) (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir. 1999)). Additionally, the court may consider evidence outside the pleadings that is undisputedly authentic and on which plaintiffs specifically relied in the complaint. Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999).

**B. Pleading Standards of the PLSRA**

Securities fraud allegations are subject to the heightened pleading requirements of the PSLRA. The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). While the PSLRA does not require plaintiffs to plead "every single fact upon which their beliefs concerning false

6

or misleading statements are based," it does require the facts
alleged to be "sufficient to support a reasonable belief as to the
misleading nature of the statement or omission." Novak v. Kasaks,
216 F.3d 300, 313-14 & n.1 (2d Cir. 2000).

### C. Section 14(e) claim (Count I)

Section 14 (e), 15 U.S.C. § 78n(e), states that it is

> unlawful for any person to make any untrue statement of
> a material fact or omit to state any material fact
> necessary in order to make the statements made, in the
> light of the circumstances under which they are made,
> not misleading, or to engage in any fraudulent, deceptive, or
> manipulative acts or practices, in connection with any
> tender offer or request or invitation for tenders, or any
> solicitation of security holders in opposition to or in
> favor of any such offer, request, or invitation. The
> Commission shall, for the purposes of this subsection, by
> rules and regulations define, and prescribe means
> reasonably designed to prevent, such acts and practices
> as are fraudulent, deceptive, or manipulative.

Item 4 of Schedule 14D-9, 17 C.F.R. 240.14d-101, requires a target
company's management to state its reasons either for recommending,
remaining neutral toward, or disapproving of a tender offer.

With respect to the June 18, 2007 Schedule 14D-9
Solicitation/Recommendation Statement [Doc. No. 31-23] at issue
here, the plaintiff contends that the defendants violated § 14(e)
of the Exchange Act and Rule 14e-2(b) promulgated thereunder by
relaying only their beliefs about the long term value of the
Company and the business plan and omitting:

7

(a) the fact that the $9.30 tender offer exceeded the range of value – $8.25 to $9.12 per share – that Piedmont's financial advisors determined, as of June 18, 2007, that a listing would produce; and

(b) the fact that this lower range of values rendered a listing unlikely.

Third Am. Compl., ¶ 78 [Doc. No. 207].

In the motion to dismiss, the defendants argue that the § 14(e) claim in the Third Amended Complaint fails to (1) allege a material misstatement or omission; (2) allege scienter; and (3) demonstrate justifiable reliance. Additionally, the defendants argue that the § 14(e) claim in the Third Amended Complaint fails to adequately allege the elements of economic loss and loss causation.

As set forth above, the PSLRA requires the complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In other words, a plaintiff must first identify the allegedly misleading statement or statements and then explain the reason it is misleading. In this case, the bases of the plaintiff's § 14(e) claim are omissions in the June 18, 2007, response. To prove a violation of § 14(e) that occurs as a result of omissions, the

8

plaintiff must prove that the omitted facts were necessary in order to make the statements made not misleading.  Therefore, to meet the PLSRA pleading requirement to explain the reason a statement is misleading necessarily includes an obligation to identify how the omitted facts made statements in the June 18, 2007 response misleading.

The only link contained in the Third Amended Complaint between the statements made in the June 18, 2007 Schedule 14D-9 Solicitation/Recommendation Statement and the omissions alleged is in Paragraph 79 in which the plaintiff alleges:

> By relaying only their beliefs about the long term value of the Company and the business plan, and omitting to state facts that they knew concerning the likelihood and expected price range in the event of a Listing, the only other potential liquidity event, Defendants engaged in a deceptive and manipulative act or practice in violation of the Section 14(e) of the Exchange Act.

[Doc. No. 207 at 33].  At no point in the complaint does the plaintiff specify which statement in the June 18 document was rendered misleading through the omission of (1) the fact that the $9.30 Tender Offer was greater than the per share value range projected for a listing, or (2) the fact that the lower range meant a listing was unlikely.

The plaintiff does make general allegations about the unavailability of a liquidity alternative which could be construed as a reason why the June 18, 2007 recommendation (as a whole) was

misleading.    See Third Am. Compl., ¶¶ 39-44 [Doc. No. 207].
However, the absence of specificity of precisely which statement in
the June 18 document was rendered misleading and a specific link
between the statement and the (presumed) reason it was misleading
does not meet the heightened pleading requirements of the PLSRA.

Additionally, the factual omissions asserted by the plaintiff,
(1) that the $9.30 tender offer was greater than the per share
value range projected for a listing, and (2) that the lower range
meant a listing was therefore unlikely, are simply conclusory
assertions and are not pled with particularity as required by the
PLSRA.  The plaintiff's clarify in the response to the motion to
dismiss that the factual bases for their assertions are a
presentation given to the directors at the June 18 meeting [Doc.
No. 125-21] and an email in which Chief Financial Officer Bobby
Bowers uses the word "killer" to describe the range of values,
$8.25 to $9.14. [Doc. No. 214-3].  A review of these documents does
not explain the plaintiff's factual support for its two assertions.
The presentation contains projections for price per share values
under various scenarios.  The email's use of the word "killer" is
ambiguous; reading the communication as whole, it cannot be
discerned whether the writer uses the term in a positive manner or
a negative one.  Accordingly, the plaintiff's assertions that (1)
the $9.30 tender offer was greater than the per share value range

10

projected for a listing, and (2) the lower range meant a listing was unlikely are not supported by particularized allegations of fact as required by the PLSRA.

The absence of particularity with respect to the factual allegations underlying the omissions identified by the plaintiff also fail to meet the PLSRA's pleading requirements as to scienter. A private securities complaint alleging that a defendant made a false or misleading statement must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2). The plaintiff's allegations are that the defendants knew and were severely reckless in omitting information about the Listing in response to the $9.30 tender offer. To support the allegation of consciousness on the part of the defendants, the plaintiff relies on the conclusory assertions about Bowers's email and the presentation made to the directors by financial advisors on June 18, 2007.

"[T]o determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by [15 U.S.C. § 78u-4(b)(2)] must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . ., but also competing inferences rationally drawn from the facts alleged." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 314 (2007). The inference urged by the

11

plaintiff, that the directors were advised that the value range upon a listing was lower than the tender offer and therefore a listing was unlikely, is not prevailing.  The Bowers email is at best a cryptic summary of the various strategic alternatives that were presented to the directors on June 18.  The email is replete with jargon and acronyms.  Moreover, the focus upon the word "killer" is meaningless.  It is impossible to discern whether Bowers was utilizing the word in a positive or negative fashion. Thus, it is just as rational for the court to interpret the facts alleged by the plaintiff as fully supporting the statements set out in the June 18, 2007 response to the $9.30 tender offer, i.e., "The Board believes that the Revised Offer is less than the potential long-term value of the Company's shares on a going forward basis." [Doc. No. 31-23 at 3].   These facts do not give rise to an inference that the defendants knew and consciously decided to conceal from shareholders that a listing was not likely to occur as scheduled.   Accordingly, the court finds that the plaintiff has failed to allege facts giving rise to a strong inference that the defendants acted with the required state of mind.

The court has determined that (1) the plaintiff failed to adequately plead that the alleged omissions rendered the statements of the June 18, 2007 Schedule 14D-9 Solicitation/Recommendation Statement  misleading, and (2) there is insufficient allegation of

12

scienter.     Therefore,  Count   I   is   subject   to   dismissal.
Accordingly,  the  court  does  not  address  the  additional  reasons
urged  by  the  defendants  in  the  motion  to  dismiss  with  respect  to
Count I.

### D.   Section 14(a) claim (Count II)

Section  14(a)  of  the  Exchange  Act  and  the  rules  and
regulations  promulgated  thereunder  prohibit  the  inclusion  of  false
or  misleading  material,  including  omissions,  which  render  the
material  false  or  misleading,  in  proxy  statements  or  other
communications  soliciting  proxies.   15  U.S.C. § 78n(a); 17 C.F.R.
§ 240.14a-9(a).   The  plaintiff  claims  that  the  defendants  violated
§ 14(a)  in  the  October  and  November  2007  proxy  filings  wherein  the
Director  Defendants  recommended  that  shareholders  vote  to  extend
the  listing  or  liquidity  deadline  of  January  30,  2008.   In  the
motion  to  dismiss,  the  defendants  argue  that  the  plaintiff's
§ 14(a)  claims  fail  because  the  Third  Amended  Complaint  fails  to
allege  any  economic  loss  that  resulted  from  the  alleged  violations.
According  to  the  defendants,  the  only  allegations  related  to
economic  loss  is  in  Paragraph  101  of  the  Third  Amended  Complaint  in
which  the  plaintiff  states, "As  a  result  of  this  wrongdoing,  the
members  of  the  Proxy  Class  have  suffered  irreparable  injury,  for
which there is  no  adequate  remedy  at  law." [Doc. No. 207].

13

In response to the motion to dismiss, plaintiff points the court to Paragraphs 63-71, 72, 74, 90, 91, 92, and 93-96 Third Amended Complaint [Doc. No. 218 at 39-40].   Additionally, the plaintiff claims that shareholders suffered economic harm because they were prevented, through reliance on the defendants' materially deficient statements, from obtaining a higher price for their stock than was ever available subsequent to the defendants' wrongful actions.

To state a claim in any private securities action, a plaintiff must allege loss causation.  Stoneridge Investment Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 165 (2008).   Loss causation requires a showing that the defendant "caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). To show loss causation, a plaintiff must prove both economic loss and proximate causation.  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005).

The allegations of economic harm as to Count II are scant. However, there are mentions of share values being lower than the $9.30 tender offer sprinkled throughout the complaint.  What is missing, however, is a connection between the misconduct alleged in Count II (material misrepresentations in the October 16, 2007 Proxy, October 19, 2007, and November 21, 2007 Supplemental Proxies)  and realization of a loss in value under the $9.30

14

offered several months prior to the challenged proxy statements. Therefore, there is simply no allegation that the alleged misstatements in the October and November 2007 proxies related to the extension of the listing date were a proximate cause of shareholders' decision to forego the $9.30 offer. Accordingly, Count II fails to state a claim for relief and is subject to dismissal.

## III. CONCLUSION

Based on the foregoing, the defendants' motion to dismiss the Third Amended Complaint [Doc. No. 214] is GRANTED. This order resolves all outstanding issues in this matter, and the clerk is DIRECTED to close this civil action.

SO ORDERED, this 27th day of August, 2012.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |
|---|---|
| In Re: Piedmont Office Trust Inc. Securities Litigation | CIVIL ACTION FILE<br><br>NO. 1:07-cv-2660-CAP |

## J U D G M E N T

This action having come before the court, Honorable Charles A. Pannell, Jr., United States District Judge, for consideration of defendants' Motion to Dismiss Third Amended Complaint, and the court having granted said motion, it is

**Ordered and Adjudged** that the plaintiffs take nothing; that the defendants recover their costs of this action, and the action be, and the same hereby, is **dismissed**.

Dated at Atlanta, Georgia, this 27th day of August, 2012.

JAMES N. HATTEN
CLERK OF COURT

By:  s/Andrea Gee_____
Deputy Clerk

Prepared, Filed, and Entered
in the Clerk's Office
  August 27, 2012
James N. Hatten
Clerk of Court

By: s/Andrea Gee_____
        Deputy Clerk

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

In Re: Piedmont Office Trust Inc.
Securities Litigation

CIVIL ACTION FILE

NO. 1:07-cv-2660-CAP

## J U D G M E N T

This action having come before the court, Honorable Charles A. Pannell, Jr., United

States District Judge, for consideration of defendants' Motion to Dismiss Third Amended

Complaint, and the court having granted said motion, it is

**Ordered and Adjudged** that the plaintiffs take nothing; that the defendants recover

their costs of this action, and the action be, and the same hereby, is **dismissed**.

Dated at Atlanta, Georgia, this 27th day of August, 2012.

JAMES N. HATTEN
CLERK OF COURT

By:  s/Andrea Gee_____
Deputy Clerk

Prepared, Filed, and Entered
in the Clerk's Office
 August 27, 2012
James N. Hatten
Clerk of Court

By: s/Andrea Gee_____
        Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| In Re: Piedmont Office Trust Inc. Securities Litigation | CIVIL ACTION NO. 1:07-CV-2660-CAP |

**O R D E R**

This matter is before the court on the defendants' motion to dismiss the Third Amended Complaint [Doc. No. 214].

**I.   BACKGROUND**

This action was filed on October 25, 2007 [Doc. No. 1], as a purported class action against Piedmont Office Realty Trust, Inc. ("Piedmont"), and certain Piedmont directors and officers.  The plaintiff, a Piedmont shareholder, filed its Amended Complaint on May 19, 2008.  After the court granted in part and denied in part the defendants' motion to dismiss the Amended Complaint, the plaintiff (at the court's direction) filed the Second Amended Complaint [Doc. No. 47].  In due course, the court granted the plaintiff's motion for certification of a class [Doc. No. 109]. Upon appeal of this ruling by the defendants, the Eleventh Circuit Court of Appeals vacated and remanded the court's decision as it pertained to presumption of reliance as set forth in <u>Affiliated Ute</u>

<u>Citizens v. United States</u>, 406 U.S. 128 (1972) [Doc. No. 181]. According to the Court of Appeals, the Second Amended Complaint did not support the ruling made by this court.  The appellate court stated, "We do not decide whether a class is supportable without the presumption of reliance nor whether a class would be supportable under allegations in an amended complaint consistent with arguments presented to the district court and this court." [Doc. No. 181 at 3].

As a result of the Court Appeals' statement, the plaintiff sought leave to file a third amended complaint [Doc. No. 186].  The court granted leave, and the Third Amended Complaint [Doc. No. 207] was filed by the plaintiff.

Count I of the Third Amended Complaint is brought pursuant to Section 14(e) of the Securities Exchange Act of 1934 ("Exchange Act") and alleges that the defendants made omissions of material information in a June 18, 2007, recommendation that shareholders not sell their shares in response to a second tender offer made by an unaffiliated entity.  Count II alleges that the defendants disseminated proxy solicitations pertaining the extension of the listing deadline in violation of Section 14(a) of the Exchange Act.

Piedmont, a Maryland corporation with its principal executive offices located in Norcross, Georgia, is primarily engaged in the acquisition and ownership of commercial real estate properties.  It

2

began as a public unlisted real estate investment trust ("REIT"),
which means that (1) it is public because it is registered with the
Securities and Exchange Commission ("SEC"), can sell to the
investing public rather than only to "qualified investors," and is
required to file reports with the SEC; and (2) it is unlisted
because its securities are not listed on a national stock exchange.
Because of this business model, Piedmont had a fixed life.
According to the Articles of Incorporation, if its stock is not
listed on a national securities exchange by January 30, 2008,
Piedmont would required to sell its assets and distribute the
proceeds.[1]

On May 25, 2007, Lex-Win Acquisition, an entity unaffiliated
with the parties in this matter, offered Piedmont's shareholders
the opportunity to tender an aggregate of up to 5.2% of the
company's outstanding shares at $9.00 net per share.  On June 12,
2007, Lex-Win increased this offer to $9.30 per share for an
aggregate of up to 9.3% of the company's outstanding shares.

---

[1] This liquidation deadline was extended through an amendment
to the Company's Articles of Incorporation.  In January 2010,
Piedmont effected a 3 to 1 reverse stock split, converting each
outstanding share of common stock into 1/12 of a share of four
classes of common stock, A, B-1, B-2, and B-3, which classes were
to become listed at various intervals on the New York Stock
Exchange.

Piedmont and its board of directors responded to both tender offers in filings with the SEC on June 8, 2007, and June 18, 2007, recommending that Piedmont's shareholders reject the tender offers. With regard to the June 18 response, the plaintiff alleges that the defendants failed to inform Piedmont's shareholders that the $9.30 tender offer exceeded the range of value – $8.25 to $9.12 per share – that Piedmont's financial advisors determined, as of June 18, 2007, that a Listing would produce and by omitting to disclose that this lower range of values rendered a listing unlikely.

On August 10, 2007, the defendants stated publicly that a listing of the company on the stock exchange would be unlikely. On October 16, 2007, Piedmont filed a Schedule 14A Proxy Statement seeking shareholders' approval to extend the January 30, 2008 deadline for up to three years at the Board's discretion. The plaintiff contends that this proxy statement was misleading in a variety of ways because it failed to disclose material facts to the shareholders.

In the Third Amended Complaint, the plaintiff names Piedmont[2] and the following Piedmont directors: (1) W. Wayne Woody; (2) Michael R. Buchanan; (3) Wesley E. Cantrell; (4)  William H.

---

[2] According to the plaintiff, Piedmont is named as a defendant because it is the instrumentality and means used by the directors to disseminate false and misleading information to the shareholders.  No monetary damages are sought from Piedmont.

4

Keogler, Jr.; (5) Donald S. Moss; and (6) Donald A. Miller (collectively "Director Defendants").  The Third Amended Complaint contains two counts: violation of § 14(e) of the Exchange Act and Rule 14e-2(b) promulgated thereunder (Count I); violation of § 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder (Count II).

The defendants have moved to dismiss the Third Amended Complaint [Doc. No. 214].  The defendants argue that the plaintiff failed to meet the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA").

## II.  LEGAL ANALYSIS

### A. Motion to Dismiss Standard

The defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6), which requires an assessment of whether the plaintiff has set forth claims upon which this court may grant relief.  Under the United States Supreme Court's recent articulation of the analytic standard involved in applying this rule, this court must construe the amended complaint in favor of plaintiff, accept the factual allegations contained in the Amended Complaint as true, and determine whether the plaintiff's factual allegations present plausible claims.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).  To be considered plausible, a claim must be more than merely conceivable.  Id. at 555.  Thus,

"[d]ismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised." Id.

In considering a motion to dismiss under Rule 12(b)(6), "the Court may take judicial notice of the contents of relevant public documents that were required to be filed with the Securities Exchange Commission ("SEC") and were actually filed." In re Bellsouth Corp. Securities Litigation, 355 F. Supp. 2d 1350, 1361 (N.D. Ga. 2005) (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir. 1999)). Additionally, the court may consider evidence outside the pleadings that is undisputedly authentic and on which plaintiffs specifically relied in the complaint. Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999).

**B. Pleading Standards of the PLSRA**

Securities fraud allegations are subject to the heightened pleading requirements of the PSLRA. The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). While the PSLRA does not require plaintiffs to plead "every single fact upon which their beliefs concerning false

6

or misleading statements are based," it does require the facts
alleged to be "sufficient to support a reasonable belief as to the
misleading nature of the statement or omission." <u>Novak v. Kasaks</u>,
216 F.3d 300, 313-14 & n.1 (2d Cir. 2000).

**C. Section 14(e) claim (Count I)**

Section 14 (e), 15 U.S.C. § 78n(e), states that it is

> unlawful for any person to make any untrue statement of
> a material fact or omit to state any material fact
> necessary in order to make the statements made, in the
> light of the circumstances under which they are made,
> not misleading, or to engage in any fraudulent, deceptive, or
> manipulative acts or practices, in connection with any
> tender offer or request or invitation for tenders, or any
> solicitation of security holders in opposition to or in
> favor of any such offer, request, or invitation. The
> Commission shall, for the purposes of this subsection, by
> rules and regulations define, and prescribe means
> reasonably designed to prevent, such acts and practices
> as are fraudulent, deceptive, or manipulative.

Item 4 of Schedule 14D-9, 17 C.F.R. 240.14d-101, requires a target
company's management to state its reasons either for recommending,
remaining neutral toward, or disapproving of a tender offer.

With respect to the June 18, 2007 Schedule 14D-9
Solicitation/Recommendation Statement [Doc. No. 31-23] at issue
here, the plaintiff contends that the defendants violated § 14(e)
of the Exchange Act and Rule 14e-2(b) promulgated thereunder by
relaying only their beliefs about the long term value of the
Company and the business plan and omitting:

(a) the fact that the $9.30 tender offer exceeded the range of value – $8.25 to $9.12 per share – that Piedmont's financial advisors determined, as of June 18, 2007, that a listing would produce; and

(b) the fact that this lower range of values rendered a listing unlikely.

Third Am. Compl., ¶ 78 [Doc. No. 207].

In the motion to dismiss, the defendants argue that the § 14(e) claim in the Third Amended Complaint fails to (1) allege a material misstatement or omission; (2) allege scienter; and (3) demonstrate justifiable reliance. Additionally, the defendants argue that the § 14(e) claim in the Third Amended Complaint fails to adequately allege the elements of economic loss and loss causation.

As set forth above, the PSLRA requires the complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In other words, a plaintiff must first identify the allegedly misleading statement or statements and then explain the reason it is misleading. In this case, the bases of the plaintiff's § 14(e) claim are omissions in the June 18, 2007, response. To prove a violation of § 14(e) that occurs as a result of omissions, the

plaintiff must prove that the omitted facts were necessary in order to make the statements made not misleading.  Therefore, to meet the PLSRA pleading requirement to explain the reason a statement is misleading necessarily includes an obligation to identify how the omitted facts made statements in the June 18, 2007 response misleading.

The only link contained in the Third Amended Complaint between the statements made in the June 18, 2007 Schedule 14D-9 Solicitation/Recommendation Statement and the omissions alleged is in Paragraph 79 in which the plaintiff alleges:

> By relaying only their beliefs about the long term value of the Company and the business plan, and omitting to state facts that they knew concerning the likelihood and expected price range in the event of a Listing, the only other potential liquidity event, Defendants engaged in a deceptive and manipulative act or practice in violation of the Section 14(e) of the Exchange Act.

[Doc. No. 207 at 33].  At no point in the complaint does the plaintiff specify which statement in the June 18 document was rendered misleading through the omission of (1) the fact that the $9.30 Tender Offer was greater than the per share value range projected for a listing, or (2) the fact that the lower range meant a listing was unlikely.

The plaintiff does make general allegations about the unavailability of a liquidity alternative which could be construed as a reason why the June 18, 2007 recommendation (as a whole) was

misleading.   <u>See</u> Third Am. Compl., ¶¶ 39-44 [Doc. No. 207].
However, the absence of specificity of precisely which statement in
the June 18 document was rendered misleading and a specific link
between the statement and the (presumed) reason it was misleading
does not meet the heightened pleading requirements of the PLSRA.

Additionally, the factual omissions asserted by the plaintiff,
(1) that the $9.30 tender offer was greater than the per share
value range projected for a listing, and (2) that the lower range
meant a listing was therefore unlikely, are simply conclusory
assertions and are not pled with particularity as required by the
PLSRA.   The plaintiff's clarify in the response to the motion to
dismiss that the factual bases for their assertions are a
presentation given to the directors at the June 18 meeting [Doc.
No. 125-21] and an email in which Chief Financial Officer Bobby
Bowers uses the word "killer" to describe the range of values,
$8.25 to $9.14. [Doc. No. 214-3].   A review of these documents does
not explain the plaintiff's factual support for its two assertions.
The presentation contains projections for price per share values
under various scenarios.   The email's use of the word "killer" is
ambiguous; reading the communication as whole, it cannot be
discerned whether the writer uses the term in a positive manner or
a negative one.   Accordingly, the plaintiff's assertions that (1)
the $9.30 tender offer was greater than the per share value range

10

projected for a listing, and (2) the lower range meant a listing was unlikely are not supported by particularized allegations of fact as required by the PLSRA.

The absence of particularity with respect to the factual allegations underlying the omissions identified by the plaintiff also fail to meet the PLSRA's pleading requirements as to scienter. A private securities complaint alleging that a defendant made a false or misleading statement must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2). The plaintiff's allegations are that the defendants knew and were severely reckless in omitting information about the Listing in response to the $9.30 tender offer. To support the allegation of consciousness on the part of the defendants, the plaintiff relies on the conclusory assertions about Bowers's email and the presentation made to the directors by financial advisors on June 18, 2007.

"[T]o determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by [15 U.S.C. § 78u-4(b)(2)] must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . ., but also competing inferences rationally drawn from the facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007). The inference urged by the

plaintiff, that the directors were advised that the value range upon a listing was lower than the tender offer and therefore a listing was unlikely, is not prevailing. The Bowers email is at best a cryptic summary of the various strategic alternatives that were presented to the directors on June 18. The email is replete with jargon and acronyms. Moreover, the focus upon the word "killer" is meaningless. It is impossible to discern whether Bowers was utilizing the word in a positive or negative fashion. Thus, it is just as rational for the court to interpret the facts alleged by the plaintiff as fully supporting the statements set out in the June 18, 2007 response to the $9.30 tender offer, i.e., "The Board believes that the Revised Offer is less than the potential long-term value of the Company's shares on a going forward basis." [Doc. No. 31-23 at 3]. These facts do not give rise to an inference that the defendants knew and consciously decided to conceal from shareholders that a listing was not likely to occur as scheduled. Accordingly, the court finds that the plaintiff has failed to allege facts giving rise to a strong inference that the defendants acted with the required state of mind.

The court has determined that (1) the plaintiff failed to adequately plead that the alleged omissions rendered the statements of the June 18, 2007 Schedule 14D-9 Solicitation/Recommendation Statement misleading, and (2) there is insufficient allegation of

scienter.     Therefore,   Count   I   is   subject   to   dismissal.
Accordingly,   the   court   does   not   address   the   additional   reasons
urged  by  the  defendants  in  the  motion  to  dismiss  with  respect  to
Count I.

### D.  Section 14(a) claim (Count II)

Section   14(a)   of   the   Exchange   Act   and   the   rules   and
regulations  promulgated  thereunder  prohibit  the  inclusion  of  false
or  misleading  material,  including  omissions,  which  render  the
material   false   or   misleading,   in   proxy   statements   or   other
communications  soliciting  proxies.   15  U.S.C. § 78n(a); 17 C.F.R.
§ 240.14a-9(a).   The  plaintiff  claims  that  the  defendants  violated
§ 14(a)  in  the  October  and  November  2007  proxy  filings  wherein  the
Director  Defendants  recommended  that  shareholders  vote  to  extend
the  listing  or  liquidity  deadline  of  January  30,  2008.   In  the
motion   to   dismiss,   the   defendants   argue   that   the   plaintiff's
§ 14(a)  claims  fail  because  the  Third  Amended  Complaint  fails  to
allege  any  economic  loss  that  resulted  from  the  alleged  violations.
According   to   the   defendants,   the   only   allegations   related   to
economic  loss  is  in  Paragraph  101  of  the  Third  Amended  Complaint  in
which  the  plaintiff  states,  "As  a  result  of  this  wrongdoing,  the
members  of  the  Proxy  Class  have  suffered  irreparable  injury,  for
which there is no adequate remedy at law." [Doc. No. 207].

13

In response to the motion to dismiss, plaintiff points the court to Paragraphs 63-71, 72, 74, 90, 91, 92, and 93-96 Third Amended Complaint [Doc. No. 218 at 39-40]. Additionally, the plaintiff claims that shareholders suffered economic harm because they were prevented, through reliance on the defendants' materially deficient statements, from obtaining a higher price for their stock than was ever available subsequent to the defendants' wrongful actions.

To state a claim in any private securities action, a plaintiff must allege loss causation. Stoneridge Investment Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 165 (2008). Loss causation requires a showing that the defendant "caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). To show loss causation, a plaintiff must prove both economic loss and proximate causation. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005).

The allegations of economic harm as to Count II are scant. However, there are mentions of share values being lower than the $9.30 tender offer sprinkled throughout the complaint. What is missing, however, is a connection between the misconduct alleged in Count II (material misrepresentations in the October 16, 2007 Proxy, October 19, 2007, and November 21, 2007 Supplemental Proxies) and realization of a loss in value under the $9.30

14

offered several months prior to the challenged proxy statements. Therefore, there is simply no allegation that the alleged misstatements in the October and November 2007 proxies related to the extension of the listing date were a proximate cause of shareholders' decision to forego the $9.30 offer. Accordingly, Count II fails to state a claim for relief and is subject to dismissal.

## III. CONCLUSION

Based on the foregoing, the defendants' motion to dismiss the Third Amended Complaint [Doc. No. 214] is GRANTED. This order resolves all outstanding issues in this matter, and the clerk is DIRECTED to close this civil action.

SO ORDERED, this 27th day of August, 2012.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge